ARNOLD & PORTER LLP
DOUGLAS A. WINTHROP (No. 183532)
douglas.winthrop@aporter.com
MICHAEL A. BERTA (No. 194650)
michael.berta@aporter.com
SEAN M. CALLAGY (No. 255230)
sean.callagy@aporter.com
Three Embarcadero Center, 10th Floor
San Francisco, California 94111-4024
Telephone:   415.471.3100
Facsimile:    415.471.3400

Attorneys for Plaintiff
ADOBE SYSTEMS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADOBE SYSTEMS INC., | No. |
| Plaintiff, | Action Filed:  October 14, 2016 |
| v. | **ADOBE SYSTEMS INC.'S COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT** |
| MEDASSETS, INC.; NTHRIVE INC. | |
| Defendants. | DEMAND FOR JURY TRIAL |

Plaintiff Adobe Systems Inc. ("Adobe"), by its attorneys, alleges as follows:

**INTRODUCTION**

1. This case arises out of the infringement of Adobe's intellectual property and breaches of contractual obligations to Adobe by Defendants MedAssets, Inc. ("MedAssets") and nThrive Inc. ("nThrive"; together with MedAssets, "Defendants").

2. Adobe is a leader in software for developers and consumers. It licenses its technology to hardware manufacturers, software developers and service providers for use in developing their products and solutions. Its products run on personal and server-based computers, as well as on smartphones, tablets and other devices, around the world.

3. Adobe's ColdFusion product offers users a single platform for building and deploying web and mobile applications. Adobe offers various releases and license options for ColdFusion, tailored to users' specific needs. Adobe allows most licensees to use ColdFusion only for internal use on a specified number of computers. As a condition of its standard internal use license, Adobe specifically prohibits licensees from deploying ColdFusion in a third party outsourcing facility or service, service bureau arrangement, time sharing arrangement, or as part of a hosted service. Thus, the ColdFusion license prevents companies from deploying ColdFusion as part of an outsourced product incorporated into products offered to third parties. Licensees who wish to obtain a custom hosting agreement covering service bureau arrangements or uses beyond the scope of the standard ColdFusion internal use license must individually negotiate a separate license with Adobe.

4. MedAssets is a provider of healthcare revenue-cycle management solutions to hospitals and healthcare providers. In June 2016, MedAssets was reorganized, and is now a part of nThrive.[1] Beginning in approximately March of 2012, MedAssets had an internal use license to ColdFusion, subject to several specific conditions and restrictions, including those described above. In 2015, Adobe became concerned that MedAssets was exceeding the scope of its license and

---

[1] It is unclear whether, after its reorganization into nThrive, MedAssets retained its separate legal identity. In an abundance of caution, Adobe has named both MedAssets and nThrive as Defendants in this matter.

violating numerous conditions of the license by incorporating ColdFusion into a product deployed to MedAssets' customers and by using ColdFusion in a service bureau arrangement.  These infringing products have been marketed by MedAssets under the name CodeCorrect.  Products that leverage Defendants' improper and infringing uses have also been offered by third parties, such as by eClinicalWorks, LLC, which has marketed a product called eClinical Works EHR that works in connection with Defendants' infringing products.  Adobe made several reasonable requests to exercise its contractual right to verify compliance with the internal use license and audit MedAssets' deployment of ColdFusion, all of which were refused.

5. As a result, Adobe is left with no choice but to seek judicial relief.  Defendants' past and continuing use and copying of ColdFusion infringe Adobe's copyrights and deprive Adobe of licensing revenue.  Accordingly, and as more specifically alleged herein, Adobe brings this suit for federal copyright infringement and breach of contract.

**JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

6. This action arises under the United States Copyright Act, 17 U.S.C. § 101, *et seq.* This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338.

7. This Court has supplemental jurisdiction over the pendent common law claim under 28 U.S.C. § 1967 because this claim is so related to Adobe's claim under federal law that it forms part of the same case or controversy and derives from a common nucleus of operative fact.

8. This Court has personal jurisdiction over Defendants because Defendants have substantial, continuous and systematic contacts with this district, including by regularly transacting business within the district.  In addition, Defendants have purposefully directed their activities toward, and consummated transactions within, this forum and have purposefully availed themselves of the privilege of conducting activities in this forum, thereby invoking the benefits and protections of its laws.  The acts complained of herein arise out of and relate to Defendants' forum-related activities, making this Court's exercise of jurisdiction over Defendants reasonable.  Finally, Defendants have contractually consented to suit in this jurisdiction to adjudicate disputes of the nature now asserted by Adobe.

9. Venue is proper in this jurisdiction under 28 U.S.C. §§ 1391(b) and 1400(a) because a substantial part of the wrongful conduct alleged herein occurred in this district, and Adobe has suffered substantial harm in this district. Additionally, Defendants may be found in this jurisdiction.

10. This is an intellectual property action and is assigned on a district-wide basis under Civil L.R. 3-2(c) and General Order No. 44.

## THE PARTIES

11. Adobe is a Delaware Corporation with its principal place of business in San Jose, California. Founded in 1982, Adobe is one of the largest and most diversified software companies in the world. Adobe offers a line of products and services used by creative professionals, marketers, knowledge workers, application developers, enterprises and consumers for creating, managing, delivering, measuring, optimizing and engaging with compelling content and experiences across multiple operating systems, devices and media. It markets and licenses its products and services directly to enterprise customers through its sales force and to end-users through app stores and its own website at www.adobe.com. Adobe also distributes its products and services through a network of distributors, value-added resellers, systems integrators, independent software vendors, retailers and original equipment manufacturers. In addition, it licenses its technology to hardware manufacturers, software developers and service providers for use in their products and solutions. Its products run on personal and server-based computers, as well as on smartphones, tablets and other devices, around the world.

12. Upon information and belief, MedAssets, Inc. is a Delaware corporation with its principal place of business at 200 North Point Center East, Suite 600, Alpharetta, Georgia, 30022.

13. Upon information and belief, nThrive Inc. is a Delaware corporations with its principal place of business at 200 North Point Center East, Suite 600, Alpharetta, Georgia, 30022.

## BACKGROUND

### A.   Adobe's Intellectual Property

14. As a world leader in providing software products and services, Adobe helps companies and developers to create, manage and deliver cutting-edge solutions. These solutions

help Adobe's customers to achieve a competitive edge in bringing solutions to market. For over 30 years, professionals around the world have used Adobe technology in all aspects of their business.

15. To address the need for rapid web and application development, Adobe and its predecessors spent years investing in and developing ColdFusion. ColdFusion is a successful product that is widely used by developers and enterprises to develop apps and mobile solutions.

16. Adobe owns all rights to the ColdFusion software and user documentation, which have been registered with the United States Copyright Office. Adobe's registrations pertinent to ColdFusion include U.S. Registration Nos. TX 6-277-686 (ColdFusion/Flex Connectivity 2.0 Public Beta); TX 6-457-916 (Adobe ColdFusion 8); TX 7-139-642 (Adobe ColdFusion 9); TX 7-229-839 (Adobe ColdFusion Builder 1.0); TX 7-404-807 (Adobe ColdFusion Builder 2); TX 7-555-186 (Adobe ColdFusion 10); TX 7-932-685 (Adobe ColdFusion Builder 3); TX 7-935-243 (Adobe ColdFusion 11). True and correct copies of these registrations are attached as Exhibits 1-8.

**B.     Purpose And Ownership of CodeCorrect**

17. CodeCorrect is a software product that allows healthcare providers to outsource healthcare billing. CodeCorrect operates by performing real-time review of electronic health record (EHR) claims and checking claims against schedules for use in the Medicare and Medicaid programs, as well as schedules used by major insurance companies and healthcare providers. On information and belief, CodeCorrect is widely used by healthcare providers nation-wide, including by many healthcare providers in this District.

18. On information and belief, CodeCorrect was originally developed by a company called CodeCorrect, Inc. based in Yakima, Washington.

19. On information and belief, in 2004, UCG Holdings, LP ("UCG") acquired CodeCorrect, Inc., and thereby acquired the CodeCorrect product.

20. On information and belief, in 2006, Dallas, Texas-based Accuro Healthcare Solutions ("Accuro") acquired CodeCorrect, Inc. from UCG, and thereby acquired the CodeCorrect product.

21. On information and belief, in 2008, Alpharetta, Georgia-based MedAssets, Inc. acquired Accuro and with it, the CodeCorrect product. In 2008, MedAssets' areas of business

included healthcare revenue-cycle management, healthcare group purchasing, healthcare performance-improvement and healthcare consulting. On information and belief, MedAssets' healthcare revenue-cycle management allows large hospitals and non-acute healthcare providers to outsource medical billing functions. MedAssets' solution relies heavily on deployment of CodeCorrect and third-party products such as eClinical Works EHR to MedAssets' customers. CodeCorrect and eClinical Works EHR have been deployed to over 4500 hospitals and 123,000 non-acute healthcare providers nation-wide.

22. In November, 2016, Pamplona Capital Management ("Pamplona"), a private equity investment company based in New York and London that manages over $10 billion in assets, announced its acquisition of MedAssets for $2.7 billion in an all-cash deal. Pamplona subsequently sold off all areas of MedAssets' business but retained its revenue-cycle management business, including CodeCorrect. Pamplona then combined MedAssets with Precyse Solutions, a separate revenue-cycle management business that Pamplona had acquired in July 2015.

23. For a time, the combination of MedAssets and Precyse Solutions was known as the "MedAssets-Precyse enterprise." The MedAssets-Precyse enterprise held itself out as a leader in providing end-to-end revenue-cycle management services, technology and education solutions. The CodeCorrect product continued to be a key element of the revenue-cycle management services offered by the MedAssets-Precyse enterprise.

24. In June 2016, Pamplona acquired Equation Health ("Equation"), a Utah-based healthcare analytics and consulting company. Later in June 2016, Pamplona announced that the combined MedAssets-Precyse-Equation company would be rebranded "nThrive".

25. On information and belief, nThrive continues to offer the CodeCorrect product in connection with its healthcare revenue-cycle management services.

**C.   Defendants' Access To ColdFusion**

26. Beginning in approximately March of 2012, and continuing into 2014, MedAssets obtained several internal use licenses to ColdFusion. The licenses executed by MedAssets are substantially in the form of the Software Licensing Agreement (the "ColdFusion License") attached as Exhibit 9. The internal use ColdFusion License allowed MedAssets to install and use

ColdFusion on MedAssets' internal network, on licensed platforms and configurations, and as otherwise set forth in the ColdFusion License. As a result of executing the ColdFusion License, MedAssets was provided with copies of the copyrighted ColdFusion executable software and documentation.

27. Section 2.6 of the ColdFusion License contains conditions and restrictions limiting the scope of uses permitted under the license. For instance, MedAssets may not "modify, port, adapt, or translate" the ColdFusion software. MedAssets also may not allow any part of the ColdFusion software "to be copied onto or accessed from another individual's or entity's" computer unless explicitly provided for under the terms of a specific license. Moreover, under the heading "Prohibited Use," the internal use License restricts licensees from outsourcing or making ColdFusion available to third-party users unless the licensee has obtained a custom hosting agreement:

> 2.6.4 Prohibited Use. Except as expressly authorized through a separate custom hosting agreement, Licensee is prohibited from: (a) using the Software on behalf of third parties; (b) renting, leasing, lending, or granting other rights in the Software including rights on a membership or subscription basis; (c) providing use of the Software in a computer service business, third party outsourcing facility or service, service bureau arrangement, time sharing basis, or as part of a hosted service; or (d) using any component, library, or other technology included with the Software other than solely in connection with its use of the Software. For more information about how to obtain a custom hosting agreement, please see: http://www.adobe.com/go/ColdFusion_Hosting_Agreement.

28. Neither MedAssets nor nThrive has executed a custom hosting agreement with Adobe that would grant either company the right to use ColdFusion beyond the scope delineated in the internal use ColdFusion License.

29. Section 5 of the ColdFusion License provides that the "Software and any copies that Licensee is authorized by Adobe to make are the intellectual property of and are owned by Adobe Systems Incorporated and its suppliers. . . . The Software is protected by copyright, including without limitation by United States Copyright Law . . . . Except as expressly stated herein, this Agreement does not grant Licensee any intellectual property rights in the Software, and all rights not expressly granted are reserve by Adobe."

30. Section 9 of the ColdFusion License provides that the terms of the license "will be

governed and enforced by and construed in accordance with" the laws of California.  The agreement further provides that the courts of Santa Clara County shall have jurisdiction over disputes related to the License.

32. To ensure compliance with the terms of the ColdFusion License, Section 12 provides that Adobe is entitled to "appoint an independent third party or Adobe's internal auditor to verify the usage and number of copies and installations of the Software in use by Licensee." Adobe's rights to do so "shall survive expiration or termination of this Agreement for a period of two (2) years."

32. The term of the ColdFusion License is potentially perpetual.  However, Section 15 of the ColdFusion License specifies that the agreement "shall remain in effect until any material breach of this Agreement by Licensee occurs, upon which this Agreement shall automatically terminate."  In the event of termination, "Licensee shall discontinue use of the Software and shall destroy the Software, Documentation, and all copies thereof."

33. On information and belief, nThrive is the successor-in-interest to MedAssets' internal use licenses to ColdFusion.

### D. Defendants Have Violated Adobe's Intellectual Property Rights And Material Terms Of The Internal Use ColdFusion License

34. Each internal use ColdFusion License agreed to by MedAssets, to which nThrive is the successor-in-interest, contains each of the conditions recited above, including prohibitions against use of ColdFusion as a hosted service or in a service bureau arrangement.  Nonetheless, prior to its acquisition by Pamplona, MedAssets began using, copying and deploying CodeCorrect in a manner prohibited by the ColdFusion license.  Specifically, MedAssets implemented ColdFusion into its CodeCorrect product, such that ColdFusion object code is executed on behalf of MedAssets' customers.  MedAssets also implemented ColdFusion as an integrated part of third-party software, such as the eClinical Works EHR program offered by eClinicalWorks, LLC.  Via eClinical Works EHR and CodeCorrect, MedAssets also deployed ColdFusion as a hosted service and in a service bureau arrangement for healthcare companies.

35. In 2015, Adobe became concerned that MedAssets' use and copying of ColdFusion on behalf of its customers as well as third parties exceeded the scope of MedAssets' internal use license. At that time, Adobe requested that MedAssets complete an "ISV Questionnaire," a standard process used by Adobe to determine the proper licensing structure for a customer's use case. MedAssets refused to comply unless Adobe executed a non-disclosure agreement. Adobe executed a non-disclosure agreement as requested by MedAssets, but MedAssets continued to refuse to complete the ISV Questionnaire.

36. Adobe also requested that MedAssets provide deployment information concerning MedAssets' use of ColdFusion, both as software-as-a-service ("SaaS") to MedAssets' customers or third parties, as well as MedAssets' internal deployment. Still, MedAssets refused to provide any deployment information, hindering Adobe's ability to verify compliance with the internal use ColdFusion License.

37. Finally, Adobe requested that MedAssets allow Adobe to conduct an audit of MedAssets' use of ColdFusion, as was Adobe's right under the ColdFusion License. MedAssets refused this request as well.

38. On information and belief, nThrive has continued to use, copy and deploy MedAssets in a manner that exceeds the scope of the internal use ColdFusion License, namely by implementing ColdFusion into CodeCorrect, by integrating third-party software such as eClinical Works EHR with ColdFusion, by executing the ColdFusion software and object code on behalf of MedAssets' and nThrive's licensees as well as their licensees' customers, and by deploying ColdFusion as a hosted service and in a service bureau arrangement for healthcare companies.

**FIRST CLAIM**
**(Copyright Infringement, Against All Defendants)**

39. Adobe realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 38 as though set forth in full herein.

40. The ColdFusion software and documentation ("Copyrighted Software") are original works of authorship and constitute copyrightable subject matter under the copyright laws of the United States, 17 U.S.C. § 101 *et seq.* The Copyrighted Software has been registered with the

1  Copyright Office.  The relevant U.S. Registration Numbers include:  U.S. Registration Nos. TX 6-277-686 (ColdFusion/Flex Connectivity 2.0 Public Beta); TX 6-457-916 (Adobe ColdFusion 8); TX 7-139-642 (Adobe ColdFusion 9); TX 7-229-839 (Adobe ColdFusion Builder 1.0); TX 7-404-807 (Adobe ColdFusion Builder 2); TX 7-555-186 (Adobe ColdFusion 10); TX 7-932-685 (Adobe ColdFusion Builder 3); TX 7-935-243 (Adobe ColdFusion 11).  Adobe is the owner of all right, title and interest to the copyright registrations for the Copyrighted Software and has complied in all respects with the laws governing copyright.

41.   As owner of the Copyrighted Software, Adobe enjoys the exclusive right to, among other things, reproduce the Copyrighted Software, prepare derivative works and distribute copies of the Copyrighted Software.  17 U.S.C. §§ 101, 106.

42.   On information and belief, Defendants had access to the Copyrighted Software and have copied the Copyrighted Software in connection with developing and deploying the CodeCorrect program and third-party software such eClinical Works EHR, and in providing CodeCorrect and eClinical Works EHR to third parties and end-users, such as hospitals and non-acute healthcare providers.

43.   On information and belief, Defendants have without authorization created, reproduced and distributed derivative works, including Defendants' products described above, based upon the Copyrighted Software.

44.   By their actions above, Defendants have directly infringed, and will continue to infringe, Adobe's copyrights in the Copyrighted Software by creating, reproducing and distributing the CodeCorrect product and associated documentation, as well as third-party products such as eClinical Works EHR.

45.   On information and belief, Defendants' infringement was deliberate, willful and in disregard of Adobe's rights, and it was committed for the purpose of commercial gain.

46.   The infringement of Adobe's copyrights by Defendants has harmed and will continue to irreparably harm Adobe unless restrained by this Court.  Adobe's remedy at law is not adequate, by itself, to compensate for the harm inflicted and threatened by Defendants.  Thus, in addition to all other remedies to which it is entitled, Adobe is entitled to injunctive relief restraining

Defendants, their officers, agents, employees, and all persons acting in concert with them from engaging in further acts of copyright infringement as described herein.

47. As a direct and proximate result of Defendants' copyright infringement, Adobe has suffered, and will continue to suffer, monetary loss to its business reputation and goodwill. Adobe is also entitled to recover from Defendants the damages it has suffered and will continue to suffer as a result of Defendants' infringement in actual amounts to be proven at trial as well as any and all gains, profits, and advantages Defendants have obtained as a result of their infringement. In the alternative, Adobe is entitled to statutory damages pursuant to 17 U.S.C. § 504(c).

48. Adobe is also entitled to recover its attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

## SECOND CLAIM
### (Breach of Contract, Against All Defendants)

49. Adobe realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 48 as though set forth in full herein.

50. Adobe and MedAssets were parties to the internal use ColdFusion License, a valid contract.

51. Adobe performed all conditions, covenants and promises required on its part to be performed in accordance with the internal use ColdFusion License's terms and conditions, and any and all other conditions required by the ColdFusion License for MedAssets' performance occurred.

52. nThrive is the successor-in-interest to Adobe's contract with MedAssets.

53. On information and belief, Defendants breached their obligations under the internal use ColdFusion License by using the ColdFusion software and documentation for purposes other than those specifically permitted under the agreement, including: the unauthorized copying and use of the ColdFusion software and documentation; the unauthorized modification, porting, adaptation and translation of the ColdFusion software and documentation; and the unauthorized creation of derivative works based on the ColdFusion software and documentation.

54. On information and belief, Defendants have also breached their obligations under the internal use ColdFusion License by using the software on behalf of third parties, including, but not

limited to eClinicalWorks, LLC; by renting, leasing, lending, or granting other rights in the ColdFusion software; by providing use of the ColdFusion software in a computer service business, third party outsourcing facility or service, service bureau arrangement, time sharing basis, or as part of a hosted service; and by using components, libraries, or other technologies included with the ColdFusion software other than solely in connection with Defendants' internal use of the software.

55. Defendants further breached their obligations under the internal use ColdFusion license by refusing to cooperate with Adobe's efforts to audit Defendants' use of ColdFusion and verify their compliance with the terms of the ColdFusion License.

56. Due to Defendants' numerous material breaches of the internal use ColdFusion License, the agreement has terminated automatically.

57. As a direct and proximate result of Defendants' breaches, Adobe has been damaged in an amount to be proven at trial. Through their breaches, Defendants not only deprived Adobe of license revenues owing by Defendants, but also inhibited Adobe's ability to seek license revenues from Defendants' customers and third parties who improperly used and received copies of or derivative works based upon ColdFusion, including but not limited to eClinicalWorks. As a result, Adobe has suffered and will continue to suffer economic injury and monetary loss to its business. In addition, the unlicensed use of ColdFusion by third parties not in a contractual or support relationship with Adobe can create concerns regarding the integrity of the product.

58. As a direct and proximate result of Defendants' breaches, Adobe is also entitled to injunctive relief. Defendants' material breaches have caused Adobe irreparable harm that cannot be compensated in monetary damages alone. Unless restrained and enjoined, Defendants will continue to harm Adobe's intellectual property rights. Adobe's remedy at law is not adequate to compensate for these inflicted and threatened injuries, entitling Adobe to injunctive relief requiring Defendants to cease all use of the ColdFusion software and documentation to which they no longer have a license and to "discontinue use of the Software" as well as "destroy the Software, Documentation, and all copies thereof," as required by Section 15 of the internal use ColdFusion License.

# PRAYER FOR RELIEF

WHEREFORE, Adobe requests that this Court award judgment against Defendants:

a. For injunctive relief under 17 U.S.C. § 502 enjoining Defendants, their officers, agents, servants, employees, successors, assigns and all persons acting in concert with it or them, from directly or indirectly engaging in acts that infringe Adobe's copyrights;

b. For an award of actual damages and any additional infringer's profits under 17 U.S.C. § 504 together with pre-judgment and post-judgment interest on the damages awarded; or if elected prior to final judgment, statutory damages pursuant to 17 U.S.C. § 504(c);

c. For an award of attorneys' fees and costs pursuant to 17 U.S.C. § 505;

d. For an award of actual damages sustained as a result of Defendants' breach of the internal use ColdFusion License;

e. For injunctive relief requiring Defendants to cease all use and disclosure of any portion of the Adobe software and documentation to which they no longer have a license and to destroy all copies of Adobe's software and documentation; and

f. Any and all other legal or equitable relief that the Court deems just and proper.

Dated: October 14, 2016

ARNOLD & PORTER LLP

By: */s/ Douglas A. Winthrop*
Douglas A. Winthrop
Michael A. Berta
Sean M. Callagy

Attorneys for Plaintiff
ADOBE SYSTEMS INC.

**REQUEST FOR JURY TRIAL**

Adobe Systems Inc. hereby requests a jury trial on all issues so triable.

Dated: October 14, 2016                     ARNOLD & PORTER LLP

                                            By:  /s/ Douglas A. Winthrop
                                                 Douglas A. Winthrop
                                                 Michael A. Berta
                                                 Sean M. Callagy

                                                 Attorneys for Plaintiff
                                                 ADOBE SYSTEMS INC.